Thank you, may it please the Court, Counsel. My name is Shanoa Payne and I represent the plaintiff, Joe Munger, and I will reserve three minutes for rebuttal time. This case represents the important question of whether an employer's FEMLA-specific notice policy requiring employees to contact a TPA to initiate FEMLA leave, which requires the qualifying, constitutes the employer's usual and customary notice and procedural requirement for seeking leave. Plaintiff asks this Court to hold that it does not, that such policy is discriminatory against employees seeking FEMLA leave and reverse the District Court's grant of summary judgment. The DOL, the plain text and history of the DOL regulations make clear that usual and non-discriminatory and generally applicable policies for requesting all types of leave. And the regulations also make clear that even in enforcing such usual and customary leave policies, employers cannot discriminate against employees taking FEMLA leave. However, if an employer has different policies for employees taking FEMLA leave and employees who are taking separate types of leave, then that is necessarily disparate treatment. It's difficult not to discriminate unless the same rules apply to both employees taking FEMLA leave and non-FEMLA leave. Doesn't an employer have to have some way to ascertain whether the employee is qualified for the FEMLA leave? It's not the same as other types of leave in that sense. How are they supposed to do that without being able to make an inquiry, as happened here? Oh, absolutely they can make an inquiry. The procedural requirement is for notice only. And the policy here is problematic because it first requires, it puts the burden on the employee to first determine that their leave is FEMLA qualifying before they can even use the proper procedural requirement. So the employee themselves have to determine first that their leave is FEMLA qualifying before they know that they must contact the TPA. And this court specifically... You make that sound more complicated than it really is. I mean, I think an employee knows, I'm trying to take sick leave, isn't that it? Is there anything else? I mean, the employee is not required to be accurate, but if he wants to try to claim FEMLA leave, he knows it. Well, no, actually to take sick leave, the employee would only be required to call off in this situation, which is what the employee did here. The policy here is specific only to FEMLA leave and is not for employees, for instance, just calling off sick. And that's why this policy is particularly problematic. And can you explain for us how normal sick leave here is distinguished from FEMLA leave? Sure. So... Particularly under this company's policy. The policy expressly says for employees who believe their leave is FEMLA qualifying, they must contact the TPA. It specifically expressly says that in the policy. And so for any other employee, for an employee requesting sick leave, for instance, and who does not believe that their leave is FEMLA qualifying, they're not required to contact the TPA. What's the difference? How is sick leave divorced from FEMLA qualifying? It would not be a serious health condition, perhaps it's a minor cold. And they're just not going to come into work that day, and it's just sick leave. That would not be a FEMLA qualifying leave. I don't understand that. Are they coterminous? Or, in fact, is sick leave separate and distinct from FEMLA leave? If it's not qualifying as a serious health condition, someone could take sick leave, but it would not be FEMLA leave. But the company isn't required to give sick leave separately. It's required by law to recognize FEMLA leave. Are you saying that this employer had a separate category that people could take off? Well, in Oregon, there is protected sick leave that employers are required to provide paid sick leave. And so there are separate categories in Oregon. And the employer doesn't require compliance with the FEMLA leave requirements for that category? I just don't understand that. Well, again, FEMLA leave only protects employees who would have a serious health condition. And so there may be different notice procedures for sick leave versus protected FEMLA leave. And FEMLA is designed to protect employees who may not know that their leave is FEMLA qualifying. So this policy really puts the cart before the horse, as the Southern District of Alabama Court recognized and more. That decision is sort of by itself, isn't it? There are other decisions that say to the contrary. Why should we take that position? Because that court's the only court that really did a thorough analysis of the text and history of the DOL regulations and looked at the intent of the term usual and customary. The other decisions really just didn't do that thorough analysis that the Moore Court did. I've got to confess, I simply do not understand the logic of why an employee in a company knowing that they have this particular requirement for qualifying for FEMLA leave may think, yeah, what I have isn't serious, so I'm not going to bother to satisfy those requirements. It seems like they actually take the extra step to say, well, let's see if I qualify. If I don't, maybe I'll still get time off anyway. But I don't understand the notion how an employee could think I'm not required to follow the company policy because I've just got a cold. It's not serious. Well, in Bock Elder, this court said that it is not the employee's burden to determine whether their leave qualifies as FEMLA. It is the employer's burden to make that determination. That doesn't really answer the question. Why would an employee disqualify himself for FEMLA leave by not following the process? The employee can follow the employer's process, but if it is FEMLA... You would expect logically that the employee would do that, only your client didn't. Why not? Because that process, they can't know that they have to follow a FEMLA-specific process. The employer told them to follow the process. That's what I just don't understand here. Your client was told repeatedly to follow the particular process and declined to do so. Actually, those facts are quite disputed as to whether the employer told Mr. Munger that he had to contact FEMLA source at any point before he was actually terminated. During the meeting prior to his termination, he asked, how can I cure this violation? He was not told to contact FEMLA source. He was told to contact HR, which he in fact said he would do. By the end of the day, he said, okay, I will contact Mr. Moore, who was a director of HR. He went back to work and he was called into another meeting, but before he was called into that meeting, he was in fact already terminated. He was sent an email, which he had told HR, please do not contact me by email. I only checked my email one week or so. He did not actually check that email at any time again before he was terminated. During the meeting again, before he was terminated, he was told he had an email that he needed to check, but he was not ever told the content of that email. There's no actual evidence in the record that he was ever told to contact FEMLA source. In fact, the evidence, a reasonable jury could conclude here that they never intended to inform him of his rights. They intended to terminate him the very second he sought FEMLA leave. They, when his supervisor- I thought the policy was also posted around his workplace. Posting is not, per the DOL regulations, sufficient to provide notice. You have to post and you have to provide distribution at the time of hiring. There's also a question of fact as to whether notice would be sufficient because posting in and of itself is not sufficient notice per the DOL regulations. There were definitely questions of fact as to whether their distribution was sufficient because one, it wasn't done at the time of hiring and there were disputed issues of fact as to whether that distribution was ever received by Mr. Munger. So I think the question is- What made it a genuine issue? I mean, the order from the district court says no reasonable juror could conclude that he didn't have actual notice. Yeah, and our position is that that holding was error and that there were disputed issues of fact for a jury considering that the company distributed it a year later, had the employees actually sign off on it at that time and that the only evidence that they had of their supposed distribution earlier was a handwritten note. They provided no evidence of actual mailing that any employees actually signed off on the distribution and Mr. Munger himself testified that he never received it, which itself should  be. Now, even if you assume that this mailing went out, the standard is that the evidence has to be clear that the employee received actual notice. So his testimony that he never received it alone should create a disputed issue of fact that he didn't receive actual notice. Well, is it a genuine issue of fact? I mean, the standard isn't somebody says something different. The standard is could a reasonable jury conclude somebody said something different and the district court's order said no, no reasonable juror could make that conclusion. Why isn't that sufficient either as a legal matter or as a factual matter? What's the evidence that means there's a genuine issue here? I think the fact that the company redistributed it and had the employees sign off is evidence that the company itself felt that meant possibly many employees did not receive it. It's a lawsuit. Okay, let's make sure we nail this down. I'm not sure that says the company concedes that it didn't give notice that was sufficient before. Felton suspenders. And again, we just disagree and believe that there are disputed issues of fact in the record regarding actual notice. And if the court doesn't have any further questions at this time, I'll save the rest of my time for rebuttal. Okay. Thank you. Very well. Thank you. Good morning, Your Honors. Anthony Kachoulis on behalf of Cascade Steel. I think that the court is, the questions were exactly on the right track with respect to what the notice was and whether or not the policy was unduly burdensome. I think it'd be good to start from a place of agreement between the parties. The parties both agree, according to the appellee's brief, page six to seven, their first brief, that Cascade, prior to 2015, had both a general call-off policy and a medical leave policy. It was still a two-step process. Even then, before 2015, when Mr. Munger is not disputing that the policy was lawful and The fact that they had a policy begs the question of whether or not he got notice of the policy. Right, Your Honor. And the court referenced the district court's decision regarding notice of the policy. We've got numerous examples. The mailing that went out in November notifying employees of the policy change, it was included with the health records or the health election form, so they'd be sure to read it, posted throughout the workplace. Again, Mr. Munger saying he didn't see that doesn't mean it didn't happen. We have witness testimony stating that it happened. Then he emailed his doctor's notes through an email account seeking time off for these absences and they sent him an email to that email address saying, please contact FEMLA source to initiate a claim. And then he talks to his supervisors, June 1, 6 a.m. They say, talk to HR, check your email, do something. He talks to his HR director at 10 a.m. and the HR director says, plainly, contact FEMLA source. Mr. Munger says, this is the record, 3 ER 375. Mr. Munger says, and these are his recorded conversations, nobody told me of any rule change, Mr. Bacon. It was posted several months ago. The doctor's notes were inaudible. Mr. Munger, well, it's still posted, but it doesn't mean anything. It says the same policy it always had. We have the right to refuse or accept doctor's notes. That's the way it's always been. You know, Mr. Munger is not looking to learn the policy. He's looking to avoid having to turn in his medical records or go through the FEMLA source process because it seems pretty clear that he does not, he understands his health condition is not a serious health condition that would be otherwise qualifying. He's taking a gamble that he knows the rules better than the company and that he can navigate those rules through years of being a union president, through his self-proclaimed quote, intimate knowledge of the rules. He believes that he can navigate those rules in such a way so that he won't have to actually certify his leave, that he can avoid it because he knows the rules well enough to know that his minor bowel obstruction that. That sounds like argument to a jury, but I don't see any evidence supporting their proposition. You're just speculating about his state of mind, but this is just, this is a closing argument to a jury, but we're not, we're not here right now. This is not a jury. This is an appellate court. And what's the summary judgment record on those that you're surmised about his state of mind? You're right, Your Honor. I was addressing our cross appeal issues that were not in the record. And let me take up your cross appeal. So how did the decision below injure your client? Well, the decision below would injure my client. How did it injure your client? Not would, how did it injure, what relief did you seek below that you didn't get from the district court? It was alternative basis for dismissal that we. Answer my question. What, what relief that you sought below that you did not get? I mean, were you injured in any way by the decision below? Was your client injured? No, Your Honor. All right. So how do you have jurisdiction to have a cross appeal? You don't have to, you don't, we don't have jurisdiction over your cross appeal. You have to have injury, in fact, to appeal. So why are you even cross appealing? Your Honor, I, I, we, we believe that if the court was willing to take up those issues, that we wanted to present those issues for the court. Well, we don't have any choice about it. This is a question of jurisdiction. We don't have any jurisdiction of your cross appeal. You can raise those questions as alternative grounds to defend the judgment below. But what you've effectively done is just through a back door enlarge your, your word limits in this case. Your Honor, the, the issue wasn't briefed by opposing counsel. Of course it wasn't. But does, that doesn't matter. We had a jurisdictional question as to your cross appeal. Your Honor, if, if, if it pleases the court, we can supplement. But I, I have no response to you except that I assume that you're right and I would agree with your position to the extent that we have not had an opportunity to brief it. Okay. So, the, going back to the, there's, you know, we have several alternative dispositive bases here for these claims to be dismissed. That the district court did dismiss these claims on. The first one is whether or not Mr. Munger provide, whether or not the policy is the usual and customary call-off policy. Again, the call-off policy before that Mr. Munger had no concerns about. Had the same two-step process. There was a call-out to notify someone you're going to be absent. And then a separate step to go talk to HR, which is allowed in the regulations to talk to, make a phone call or talk to a specific person. To qualify for a medical leave of absence. Opposing counsel makes makes several arguments relating to who that call can be to or whether or not it's okay for them to require a call to an outside source. We believe that there's clear precedent from the Ninth Circuit and across the circuits that, A, third-party administrators are perfectly acceptable in a, they're, they're, they're fine, they're a good way for companies to handle these types of claims. And two, that it's the regulations that by its plain language, this is 29 USC 825-300 at SEC, specifically 303-C, state that someone can be required to call a certain number. The court inferred before, or actually explicitly stated before, that in that the client, I'm sorry, the that Mr. Munger certainly, if he had noticed or had a belief that he had some sort of qualifying reason to take leave, that he should have taken the steps that he was told to take to qualify for that leave. In this case, if he had even taken the step that he claims was the previous policy, and that is to talk to HR and find out what his next steps are, HR would have advised him, your next step is to call a FEMLA source. The only actual change to the policy in this case is that instead of the employee calling out first step and talking to HR second step, was to call out first step and getting in contact with FEMLA source through them. So there was no kind of material substantive change to the policy that would justify the appellee's claim that the policy was not the usual and customary. So let me direct you to the text of the regulation here. So the regulation says that the employer must, the employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave. For requesting leave. It doesn't say FEMLA leave, it just says for requesting leave. All right. So why doesn't that cut it here? He requested leave. I mean, the text of the regulation. I mean, this is. I think, I think first of all, first point is that when these regulations were promulgated, there wasn't usual and customary FEMLA leave because FEMLA was just, you know, being, was for the first time employers had to react to it. So they couldn't say your usual and customary FEMLA leave procedure for companies that did not have a FEMLA leave procedure before in any event. So, but the more basic point that I want to make to that question is that there is a common understanding and I'd ask the court to take judicial notice of calling out absence, saying you're not going to be at work and leave. Leave has a common understanding of permissive absence or some sort of a more, a longer period of time, something that circumstances that make it different than, hey, I just couldn't make it to work today. So, so the usual process for. That's true. Sick leave. Why doesn't this, this is sick leave. I mean, is it just, this is just requesting leave. I mean, everyone requests sick leave. That's why, and we know that not all sick leave is FEMLA leave. Correct. Correct, Your Honor. The, you know, employers need to be able to have ways of funneling different types of leave into different categories. You know, if it's a vacation time, for example, it's not going to require FEMLA source. And it's, it's frankly an odd argument for. But, but this, the regulation doesn't distinguish between the two. Regulation doesn't do it on its face. It just says usual and customary notice for requesting leave. There's no, it doesn't demarcate your, the particular buckets of leave. It just says leave. Right. And our argument is that prior to this, our usual and customary for medical leaves of absence, which is the closest parallel we can come, come up with, was that there were two steps you call out absent, and then you call another number regarding leave. So there really is, it really is the usual and customary policy for taking leave. The difference is, is that it's, it's different than the policy for, hey, I'm not going to be at work today. It's different from, I'm going to be absent today. Can someone. I don't see that. I just, it seems to me he followed the usual customary notice. He just, he, he emailed his, his, his, called his, his supervisor. Said I've got these, these issues. Here's my doctor's notes. Right. He's requesting leave. Right. Even, even, and, and the next step that Mr. Munger knew before this was to talk to HR, who would then contact FEMLA source. And what he was told on this occasion expressly was your next step is to contact FEMLA source. The, you know, the fact that there's certification requirements and that there's, you know, serious health condition requirements. All, you know, all of those are additional steps that, you know, to get the process going. If someone knows that they, they want, they need to get an absence excuse. They need to do something to have it excused more than just be absent. Then the usual and customary process for. Call your supervisor. Ask your supervisor. Can I get leave? Right. And, and he did that in this. And we have that 6am recorded phone call from the first supervisors that said, this is not excused. Your leave is not excused unless you follow the usual policy. He said, what's that? And they said, go talk to HR or check your email. And the email said, contact FEMLA source. So, so those are the, that's, that's the point on, on those regulations as far as whether or not. Let's see. Whether Mr. Munger put Cascade on sufficient notice of his need for FEMLA leave. That's a separate dispositive issue that's also on appeal decided by the district court. Mr. Munger, the, the court talked about how calling out sick without more is not adequate notice of someone needing to take FEMLA leave. Mr. Munger, in his own deposition testimony, admitted that simply saying FEMLA does not put the employer on notice that someone has a qualifying basis for FEMLA leave. Would that the medical notes provide the, that's the qualifying basis? The medical note says that he's got this serious condition. Doesn't that suffice? I don't, I don't recall the medical note saying they had a serious medical condition. I think it said that Mr. Munger was in my care, is my recollection. I could be mistaken. I don't have it in front of me. But I think the medical note simply said Mr. Munger is in my care or I treated Mr. Munger. If it said, frankly, Mr. Munger has a serious medical condition that's incapacitated him, that, that would definitely be more notice than what was provided, certainly. But that wasn't the case. Dr. Disney, who treated him, actually testified, and it's in the record, that it could have been serious. This could have been a serious issue, but it wasn't. So he could not have said that because he didn't personally believe it. And that's in, actually, that's the, Mr. Munger's declaration in response to the summary judgment. So the, the argument that, you know, and again, the, the, the statute's regulations are very, very clear that it's the employer who decides, who needs to receive factual information to determine whether or not someone's eligible for FEMLA. It's not the employee who tells them, I'm eligible for FEMLA. The employer receives information knowledge that alerts them to the fact that, that FEMLA is an issue here and that we need to take next steps. Of course, here, frankly, they took those next steps. You're saying then it doesn't matter. He doesn't have to, doesn't, you're saying there's really no distinction between FEMLA and regular leave and we'll all sort it out up in company, up, up above. And it doesn't really matter because we're going to, it doesn't matter what you say it is. I mean, your, your argument is contradictory here. It doesn't matter what you say it is on what level, if I can understand better. You're saying it doesn't matter whether he characterizes it as FEMLA leave or regular leave because ultimately it doesn't matter what he characterizes it as because we're going to make our own decisions. So how, how is that consistent with your argument? Well, he didn't follow the procedure to give us FEMLA notice under the regulation. Right. So his notice that he gives some of a health condition is by calling FEMLA source and advising them of what, you know, what the next steps are to, for a FEMLA claim. And FEMLA source is, are professionals on this. They know exactly kind of what to do, when to do it. And all you have to do to initiate that process is make that first phone call. That's all Mr. Langer had to do was make that phone call, which again, was always part of the process before. It was just, he would contact HR, a specified person. Now, again, according to the regulations, he had to contact, make a specified phone call to initiate that claim. This is very simple. And this is not a case about somebody who is being denied some right that they didn't know about, some right that they weren't aware they had. This is about someone who was very much aware of their right because they said it. That's why he sought the leave. He was aware of his rights. Right. He was aware. Right. He was aware of his rights. And he was aware, based on the record, again, it's implausible based on the record that he did not know the next step was to call FEMLA source to initiate a claim. He willfully chose not to do that. He therefore was subject to the company's usual and customary discipline policy, which said that he received attendance incidents for not being present on that day. Thank you very much, your honors. Thank you. Thank you. OK, you have just under three minutes. You can go ahead. Thank you. I just want to address what factually actually occurred in this case. And FEMLA source was contacted and notified that Mr. Munger took leave. The only thing that didn't happen here is that Mr. Munger himself didn't contact FEMLA source. And there's no dispute that Cascade knew Mr. Munger was invoking his FEMLA rights. His supervisor contacted HR and said, Mr. Munger has expressly called off FEMLA on his call-off form. How should we treat that? And as a result, HR was contacted and HR contacted FEMLA source. And the policy itself allows Cascade to contact FEMLA source and initiate a FEMLA leave request on behalf of the employee. However, instead of doing that, Cascade's supervisors or, sorry, HR did not initiate that leave request for Mr. Munger. They just wanted to confirm that Mr. Munger had not done so himself so that they could start termination proceedings against Mr. Munger. They wanted to make sure that he had not himself jumped through that technical hoop so that they could start termination proceedings against him because they said that this was a serious situation and that Mr. Munger had a, what they quoted, was a long history. They saw Mr. Munger as somebody who, you know, or, sorry, what is in the record is that Mr. Munger has had a long history of standing up for his rights, invoking or stating that he believed that Cascade was violating his FEMLA rights. And so what is in the record is that they said that he had a long, they had a long history with this employee. So they were very- He's worked there 23 years. Yeah, well, yeah, but the way that it shows up in the record is in the context of talking about wanting to terminate his employment. And- So how does that help you? Because FEMLA doesn't protect that motivation, doesn't protect against that motivation. It protects against retaliation for exercising FEMLA rights, but it doesn't protect against an employee who they think is insubordinate or determined to do things his own way. Indeed, it appears the complaint here is that he just said, no, this is not what I'm going to take responsibility for. You're going to have to do it, much as you've argued that HR could have done it. But if the company says, we're tired of dealing with an employee that makes us do things the way he wants it done, FEMLA doesn't seem to help him at all, does it? Well, I think basically what Cascade's argument boils down to here is that all he had to do was contact FEMLA source. FEMLA source was contacted- And he refused to do that. And our argument is- To the was contacted. Mistakes were made as opposed to I made a mistake. And the company's position is he had the responsibility to do that and refused to. He wanted to put that burden on the company. Company decides we're tired of that. We're not going to put up for it anymore. That may or may not be a wise decision, but FEMLA doesn't help him against that motivation unless he actually has done what he needs to do to trigger his FEMLA rights, which he declined to do. I'm not sure how telling us that they decided they wanted to terminate him for this different reason strengthens the claim that he has rights that are protected under FEMLA. May I answer your question? Oh, yeah. Thank you. I think it shows that as soon as he initiated his FEMLA request, the discussion went directly to termination and that there was no intent to actually inform him of his rights and how to actually contact FEMLA source. And they used that technical barrier as a way to terminate him. And so the motivation was to use this rule as a way to interfere with his FEMLA rights and to terminate him. Any other questions?  Thank you very much. Thank you. All right. These consolidated matters are submitted.
judges: CLIFTON, THOMAS, Baker